IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

───────────────

**WildEarth Guardians**,

    Plaintiff,

    v.                                              Civ. No. 12-035 BB/WPL

**Lisa P. Jackson,** in her official capacity as
Administrator, United States Environmental
Protection Agency,

    Defendant.

## **MEMORANDUM OPINION**

Section 304(a)(2) of the Clean Air Act ("CAA") provides that any person can sue the Administrator of the Environmental Protection Agency "where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary." 42 U.S.C. § 7604(a)(2). Relying on this provision, WildEarth Guardians ("Guardians") filed this action alleging that Lisa P. Jackson, the current Administrator of the Environmental Protection Agency ("EPA"), failed to either issue or deny a Title V permit for the Sims Mesa natural gas processing facility. *See* Doc 1. EPA now moves to dismiss the suit for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1), (6). EPA claims that section 505(c) of the CAA does not impose a nondiscretionary duty on the EPA to issue or deny a Title V permit on the 91st day after the state permitting authority fails to respond to EPA's objections. 42 U.S.C. § 7661d(c); *see* 40 C.F.R. § 71.7(g)(5). Absent such a nondiscretionary duty, EPA asserts that Guardians' lawsuit does not fit within section 304(a)(2)'s narrow waiver of sovereign immunity; thus, the case must be dismissed for lack of subject matter jurisdiction.

## I. Background

Congress enacted the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401-7671q, "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." *Id.* at § 7401(b)(1).  To help meet this goal, the 1990 amendments to the CAA created the Title V permit program – an operating permit program that applies to all major stationary sources of air pollution.  *See New York Pub. Interest Research Group v. Whitman*, 321 F.3d 316, 320 (2d Cir. 2003) (discussing the requirements of Title V).

The Sims Mesa natural gas processing facility (the "facility"), located in Rio Arriba County, New Mexico, is a major stationary source subject to the regulations of the CAA.  It applied for a Title V permit from the State of New Mexico.[1]  According to the Statement of Basis for the permit, the facility has the potential to emit 194.8 tons of nitrogen oxides, 356.8 tons of carbon monoxide, 171.6 tons of volatile organic compounds ("VOCs"), and 39.6 tons of hazardous air pollutants.  Doc. 1, ¶22.  Among those hazardous air pollutants are 2.8 tons of benzene, a known carcinogen.  *Id.*

Guardians objected to New Mexico's issuance of a Title V permit for the facility, alleging that the terms of the draft permit failed to assure compliance with the CAA.  *Id.* at ¶24.  New Mexico rejected Guardians' comments and submitted the permit to EPA for approval on December 30, 2009.  *See* 42 U.S.C. 7661d(a)(1)(B) (requiring a state permitting authority to forward the proposed permit to EPA for the Agency's review); *see also* 40 C.F.R. § 70.7(a)(v).

---

[1] The EPA has approved New Mexico's administration of its Title V permitting program. *See* 69 Fed. Reg. 54,244-47 (Sept. 8, 2004).  The New Mexico Environment Department, Air Quality Bureau is responsible for issuing Title V permits in New Mexico.

EPA then had a 45-day window to review the Title V permit application. 42 U.S.C. 7661d(b)(2). Since EPA did not object to the permit within this timeframe, Guardians filed a Title V petition urging EPA to object to the permit on the basis that the permit, among other things, failed to assure compliance with the CAA's Prevention of Significant Deterioration requirements, lacked sufficient monitoring requirements, and failed to require prompt reporting. Doc. 1, ¶24. When EPA failed to respond to Guardian's petition, Guardians filed a suit in this Court to compel agency action. *See WildEarth Guardians v. Jackson*, Civ. Case No. 10-0877 (D.N.M. Sept. 21, 2012). To settle that case, EPA agreed to object to the Title V permit; it did so on July 29, 2011.

Once EPA objected to the permit, the review process shifted back to the permitting authority; i.e. New Mexico. According to the CAA, New Mexico had 90 days to respond to the EPA's objection, that is by October 27, 2011. *See* 42 U.S.C. § 7661d(c); 40 C.F.R. 71.7(g)(4). When New Mexico failed to meet this 90-day deadline, the permitting process reverted to EPA to issue or deny the permit. *See* 40 C.F.R. 71.7(g)(5). EPA did not, however, issue or deny the permit on the following day – October 28, 2011 – the 91st day after New Mexico had failed to respond. Guardians thus provided the Administrator with notice of her alleged violation of a nondiscretionary duty, allegedly, her duty to issue or deny the Title V permit after New Mexico had failed to respond within 90 days.

Pursuant to 42 U.S.C. § 7604(b)(2), Guardians then waited for the 60-day notice period to elapse. Because EPA had not issued or denied the permit after those 60 days had passed (indeed, EPA has yet to issue or deny the permit), Guardians filed the instant citizen suit under section 304(a)(2) of the CAA alleging that EPA failed to perform a non-discretionary duty. 42 U.S.C. 7604(a)(2).

## II. Standard of Review

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Fed. R. Civ. P. 12(b)(1) authorizes a motion to dismiss based on lack of subject matter jurisdiction. Where Congress places limits on the jurisdiction of federal courts, such limits "must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 375 (1978). The party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the court's jurisdiction. *See United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994).

## III. Discussion

### A. Citizen Suit Provision

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Nero v. Cherokee Nation of Okla.*, 892 F.2d 1457, 1463 (10th Cir. 1989) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)) (alterations omitted). Such consent "cannot be implied but must be unequivocally expressed." *Mitchell*, 445 U.S. at 538 (quotation omitted). Thus, where the defendant is a federal agency, a plaintiff must establish that Congress has waived sovereign immunity for the particular claim.

Section 304(a) of the CAA waives sovereign immunity for certain specific claims against the EPA. 42 U.S.C. § 7604(a). For example, when the EPA misses a statutorily-imposed deadline, its failure is reviewed in the context of a nondiscretionary-duty suit under section 304(a)(2). *See* 42 U.S.C. § 7604(a)(2). By contrast, "when a statute requires agency action at indefinite intervals," the EPA's failure to act is reviewed for unreasonable delay pursuant to

section 304(a). *See id.* at § 7604(a).² Here, Guardians has elected to bring a nondiscretionary-duty suit against the EPA under section 304(a)(2).

The Tenth Circuit has set forth the principles for nondiscretionary-duty citizen suits. In its view, in section 304(a)(2), Congress "restricted citizens suits to actions seeking to enforce specific non-discretionary clear-cut requirements of the Clean Air Act." *Mountain States Legal Found. v. Costle*, 630 F.2d 754, 766 (10th Cir. 1980) (citing *Anaconda Co. v. Ruckelshaus*, 482 F.2d 1301 (10th Cir. 1973); *see also Farmers Union Cent. Exchange, Inc. v. Thomas*, 881 F.2d 757, 760 (9th Cir. 1989) (explaining that only violations of "clear-cut" nondiscretionary duties give rise to jurisdiction under the citizen-suit provision). The question then is what gives rise to a non-discretionary clear-cut requirement.

On this point, the D.C. Circuit has emphasized the importance of date-certain deadlines. "In order to impose a clear-cut nondiscretionary duty, we believe that a duty of timeliness must 'categorically mandat[e]' that *all* specified action be taken by a date-certain deadline." *Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C. Cir. 1987) (emphasis in original). Such date-certain deadlines enable a court to readily determine whether a violation occurred. *Id.* That is, "the only question for the district court to answer is whether the agency failed to comply with that deadline." *Id.* If this date-certain test governs, Guardians can only bring a citizen suit under section 304(a)(2) if Congress, by enacting the Title V program, mandated that the EPA issue or deny the Sims Mesa Title V permit by a specific date.

---

² There is another important distinction between nondiscretionary-duty and unreasonable-delay suits, namely, the length of notice required prior to filing suit. Where a plaintiff must provide the agency with notice 60 days before commencing a nondiscretionary-duty suit, a plaintiff must provide the agency with notice 180 days before commencing an unreasonable-delay suit. 42 U.S.C. § 7604(b)(1), (2).

Guardians, however, asserts that there is another way of identifying a nondiscretionary duty – by inference from the overall statutory scheme. According to Guardians' reading of *Sierra Club v. Thomas*, a deadline may exist, even though not explicitly set forth in the statute, "if it is readily-ascertainable by reference to a fixed date or event." *Id.* at 791 n. 58. That is, "there may be isolated occasions when, upon extensive analysis, one can conclude that an inferrable deadline imposes a mandatory duty of timeliness . . . ." *Id.* at 791. This notion of an "inferrable" nondiscretionary deadline has gained traction in at least one case interpreting the Clean Water Act's citizen-suit provisions. *See Raymond Proffitt Found. v. U.S. E.P.A.*, 930 F. Supp. 1088, 1100 (E.D. Pa. 1996) (analyzing the Clean Water Act's citizen suit provisions and explaining that "an 'inferrable deadline,' such as the one in this case, gives rise to the same nondiscretionary duty—albeit, somewhat more of a moving target—than a 'date-certain' or 'bright-line' deadline imposes"). The D.C. Circuit's decision in *Sierra Club*, however, clearly foreclosed the general notion of inferring a deadline from a statutory scheme. The court stated in no uncertain terms: "it is highly improbable that a deadline will ever be nondiscretionary, i.e. clear-cut, if it exists only by reason of an inference drawn from the overall statutory framework." *Thomas*, 828 F.2d at 791 (quotations omitted).

In this case, the Court need not decide whether a date-certain deadline is the only way to establish a nondiscretionary duty or whether a nondiscretionary duty can also be inferred from a statute. Under either approach, EPA did not have a nondiscretionary duty to issue or revoke the Title V permit after New Mexico had failed to respond to EPA's objections within 90 days.

**B. Title V of the Clean Air Act**

The parties agree that EPA has a mandatory duty to issue or deny a Title V permit. Yet, they dispute when EPA must carry out that duty. This dispute thus turns on whether Section

505(c) of the CAA, 42 U.S.C. § 7661d(c), imposes a "readily ascertainable" deadline such that EPA has no discretion over when it can issue or deny a Title V permit.  *See Thomas*, 828 F.2d at 791 n. 58.

To begin, the plain text of Section 505(c) does not impose a date-certain deadline on the EPA.  This section states:

> If the permitting authority fails, within 90 days after the date of an objection under subsection (b) of this section, to submit a permit revised to meet the objection, the Administrator shall issue or deny the permit in accordance with the requirements of this subchapter.

*Id.*  Clearly, this section imposes a specific deadline on the permitting authority: to submit a revised permit within 90 days after EPA's objection.  *See also* 40 C.F.R. § 70.7(g)(4) ("The permitting authority shall have 90 days from receipt of an EPA objection to resolve any objection that EPA makes and to terminate, modify, or revoke and reissue the permit in accordance with the Administrator's objection.").  If the permitting authority fails to meet this nondiscretionary duty, however, the statute does not then require EPA to issue or deny the permit the very next day – that is, on the 91st day after its initial objection.  Nothing in the text of Section 505(c) imposes such a strict date-certain deadline.  *See Thomas*, 828 F.2d at 791.

Nor could a nondiscretionary duty be inferred from the statute.  Section 505(c) clearly states that EPA must " issue or deny the permit in accordance with the requirements of this subchapter."  42 U.S.C. § 7661d(c).  Those requirements include a number of additional procedural requirements.  *See* 40 C.F.R. § 71.7(g)(5).  Specifically, if the permitting authority fails to revise the Title V permit within the 90 days specified by the statute, EPA must issue or deny the permit *after* (1) providing at least 30 days notice to the *permittee* in writing of the reasons for any such action, and (2) providing the *permittee* with a hearing.  *See* 40 C.F.R. §

71.7(g)(5)(i), (ii). These additional procedures protect the interests of the permittee and must take place before the EPA issues or denies the permit. What is more, these additional procedures are time consuming – a point emphasized by EPA. *See* Doc. 18, pp.4-5. To state these additional procedures, then, is to make apparent that there cannot be a date-certain deadline for EPA's decision to deny or revoke the permit. Indeed, it borders on absurd to argue that EPA must take action on the 91st day from the issuance of its objection if the permitting authority fails to revise the permit.

     Guardians sees things differently. They argue that Section 505 imposes specific deadlines for each step in the process of obtaining a Title V Operating Permit. These deadlines are as follows: First, the state permitting authority must submit a copy of the permit to EPA at which point EPA has 45 days to review the permit. 42 U.S.C. § 7661d(b)(1). If EPA does not object to the permit, within 60 days after expiration of EPA's 45-day review period, any person may petition EPA to object to the permit. *Id.* § 7661d(b)(2). EPA then has 60 days to act on the petition. *Id.* If EPA grants the petition and objects to the permit, the permitting authority then has 90 days after the objection to submit a revised permit to meet the objection. *Id.* § 7661d(c). Given these strict deadlines, Guardians argues that it would make no sense to grant the EPA, at the final stage of the process, unlimited discretion to defer a decision on a permit that the agency has already decided does not comply with the CAA.

     One district court has adopted this line of reasoning. *See Sierra Club v. Johnson*, 500 F. Supp. 2d 936, 938 (N.D. Ill. 2007). There, the District Court for the Northern District of Illinois was faced with precisely the issue in this case: whether section 505(c) imposed a nondiscretionary duty on the EPA to issue or deny a Title V permit after the state permitting authority failed to respond to EPA's objections. *Id.* at 940-41. In the court's view, it seemed

absurd to "allow[] the Administrator to begin again an entire lengthy process [of reviewing a Title V permit] if the state misses its deadline" to respond to the EPA's objections within 90 days.  *Id.*  The court thus concluded that EPA was subject to a nondiscretionary duty to issue or deny the permit.  Yet, despite this conclusion, the court never explained the deadline for this duty – apparently the court assumed the EPA had to act on the 91st day.

This conclusion, however, misses two important points.  First, the permittee must be provided with notice and a hearing before EPA's action.  *See* 40 C.F.R. 71.7(g)(5).  Neither Guardians nor the District Court for the Northern District of Illinois mentioned these additional procedural requirements.  Yet, they are clearly written into the regulations and require additional time-consuming procedures on the part of EPA.  EPA must therefore retain a certain amount of discretion as to when it must issue or deny the permit – a point implicitly conceded by the court in *Johnson* given its inability to identify a specific date for the EPA's action.  *See Johnson*, 500 F. Supp. 2d. At 940-41.

Second, contrary to Guardians' argument, EPA does not have unlimited discretion as to when it can issue or deny the permit.  EPA itself concedes that it is subject to an obligation to act within a reasonable time after the 90-day period expires, and that obligation can be enforced through the unreasonable-delay provisions of Section 304(a).  *See* Doc. 18, p. 5; *see also* 42 U.S.C. § 7604(a); *Am. Lung Ass'n v. Reilly*, 962 F.2d 258, 263 (2d Cir. 1992).[3]  Surprisingly, it appears that the District Court for the Northern District of Illinois failed to consider the fact that EPA could be subject to an unreasonable-delay suit under section 304(a) – an oversight that may

---

[3] To file an unreasonable-delay claim, Guardians would have to provide EPA with a notice of intent to sue 180 days before commencing such a claim.  42 U.S.C. § 7604(a).  Here, Guardians only provided EPA with a notice of intent to sue 60 days before commencing the instant action, all that is required for a deadline suit under section 304(a)(2).  *Id.* at §7604(a)(2).

have led the court to incorrectly force the case before it into the nondiscretionary-duty citizen suit provision of section 304(a)(2).

In sum, then, Guardians has failed to demonstrate that Section 505(c) imposes a date-certain deadline on the EPA. Nor can such a deadline be readily inferred from the statute. EPA was not therefore subject to a nondiscretionary duty to act. Accordingly, this citizen suit is not authorized by Section 304(a)(2) of the CAA and thus is dismissed for lack of subject matter jurisdiction.[4]

### IV. Conclusion

For the foregoing reasons, the case is dismissed for lack of subject matter jurisdiction.

Dated this 2nd day of August, 2012.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE.

---

[4] As consolation, EPA suggests that Guardians may be able to file an unreasonable-delay claim under Section 304(a). Such an approach, however, raises some difficult issues regarding the requisite notice. EPA appears to suggest that Guardians would have to provide another notice of intent to sue under Section 304(a) and then wait 180 days before filing suit. Additional notice may not, however, be required if Guardian's notice of intent to sue under section 304(a)(2) could also be construed as notice of intent to sue under section 304(a). If that were the case, Guardians would already have provided EPA with notice of an unreasonable-delay suit. And, since 180 days have passed since that initial notice, Guardians could conceivably file its unreasonable delay claim immediately. In response to this motion, the Court need not decide this issue.